## THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Bankruptcy No. 15-70020-JAD |
| JAMES W. PRICE, | : | Chapter 13 |
| Debtor. | : | |
| | | |
| KIMBERLY PRICE, | : | Adversary No. 15-07012-JAD |
| Plaintiff, | : | |
| v. | : | |
| JAMES W. PRICE, | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

The matter before the Court is a *Complaint Objecting to Discharge of a Debt* (the "Complaint") filed by Kimberly Price (the "Plaintiff") against James W. Price (the "Defendant"). The matter is a core proceeding over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(i) and (j). For the reasons set forth more fully below, the Court denies the discharge of the Defendant's debts owed to the Plaintiff.

### I.

Plaintiff and Defendant were married on June 26, 1993. Their daughter was born on January 5, 1995, and their son was born on September 4, 2000. On January 28, 2002, the parties executed a *Separation Agreement and Property Settlement* (the "Settlement Agreement"). (See Doc. # 13, Exhibit A). Following the Defendant's filing of a *Petition to Rescind the Separation Agreement*, the parties thereafter entered into a *Consent Order* (the "Consent Order"), dated December 14, 2011 and filed December

{00016754}

15, 2011, which modified portions of the Settlement Agreement and was filed within their divorce proceeding in the County of Carteret, North Carolina, at 08 CVD 1757.

The Defendant filed a Chapter 13 bankruptcy petition on January 9, 2015, in Case Number 15-70020-JAD. The Plaintiff initiatied the instant adversary proceeding by filing the Complaint on April 21, 2015, averring that the payments owed to her pursuant to paragraphs 2 and 7 of the Consent Order are nondischargeable domestic support obligations under 11 U.S.C. § 523(a)(5). (Doc. # 1). The Defendant filed an *Answer and New Matter* on May 5, 2015, arguing that payments provided for in paragraph 7 of the Consent Order do not constitute nondischargeable support payments, but rather mortgage obligations encumbering the parties' marital residence owed to the mortgage lender and dischargeable under 11 U.S.C. § 1328. (Doc. # 5). The Plaintiff filed a *Reply* on May 21, 2015. (Doc. # 8).

On September 10, 2015, the parties filed a *Joint Stipulation of Facts* (the "Joint Stipulation"). (Doc. # 15). Therein, the parties agree that the Consent Order is the current order with regard to child custody and child support. (Id. at ¶ 7). Paragraph 2 of the Consent Order provides the following:

> Plaintiff shall pay to Defendant child support in the amount of $758.00 per month for the benefit of the minor children and that said amount shall be paid in lieu of any amount due under the current North Carolina Child Support Guidelines. The parties further agree that this amount is sufficient to provide for the general needs and welfare of the minor children. These child support payments shall be made on or before the first day of each month following execution of this agreement, and shall continue until the first day of the month following the minor child, AMP, graduating from high school. The Plaintiff's child support obligation shall not increase or decrease following the minor child, CBP, reaching the age of majority.
>
> Furthermore, the sum herein agreed to be paid by Plaintiff for child support shall not be subject to change for a period of seven (7) years and the parties agree not to and shall not seek a modification of child support for this prescribed

> period, unless, and only if, the conditions set forth in paragraph 7(b) below have been met.

Paragraph 7 of the Consent Order provides:

> The parties further agree that the Separation Agreement executed by the parties on January 28, 2002 shall be modified as follows:
>
> (a) Plaintiff shall be responsible for paying $901.95 towards the monthly payment due under the Note secured by the Deed of Trust recorded in Book 832, Page 248, Carteret County Register of Deeds (hereinafter "the property") for a period of sixty (60) months. Said sixty (60) month period shall begin December 1, 2011. Thereafter, Plaintiff shall be responsible for paying $450.98 towards the monthly payment due under the above referenced Note for a period of twenty-four (24) months. Thereafter, Defendant shall be solely responsible for all sums due and owing and shall hold Plaintiff harmless regarding the same.
> (b) If Defendant sells the property, or the Plaintiff is otherwise relieved of his obligation to pay under the Note, prior to December 1, 2018, then the Plaintiff shall have no further obligation to make any subsequent payment under the Note and the Defendant shall be entitled to seek modification of future child support.
> (c) Defendant shall cooperate and execute all necessary documents to allow Plaintiff to refinance the property.
> (d) Upon cessation of the Plaintiff's obligation to make monthly payments due under the Note, Defendant shall refinance the property so as to remove Plaintiff from the Note.

The parties agree that payments provided for in paragraph 7 are made on the mortgage encumbering the residence in which the Plaintiff and the parties' children currently reside (the "Residence"). (Id. at ¶ 10). The parties also agree that the Debtor attempted to modify the payments required under the Consent Order in 2014, but such motion was denied by Order dated July 17, 2014. (Id. at ¶ 11).

After filing Pre-Trial Statements (see Doc. ## 14, 15), the parties filed a stipulation on September 23, 2015 agreeing to have the case decided based on

documents submitted, the Pre-Trial Memoranda, and the Joint Stipulation (see Doc. # 16). The matter is now ripe for decision.

## II.

In determining whether specific obligations are excepted from discharge in bankruptcy, courts must balance two competing policies: the fresh start principle and the Congressional policy of giving first priority to the adequate financial maintenance of a debtor's children and ex-spouse. Buccino v. Buccino, 397 Pa.Super. 241, 250-51, 580 A.2d 13, 18 (1990) (citing In re Schmiel, 94 B.R. 373, 377 (Bankr. E.D. Pa. 1988). 11 U.S.C. § 523(a)(5) establishes this Congressional policy, providing that a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) does not discharge an individual debtor from any debt for a domestic support obligation. 11 U.S.C. § 523. "Given the tenacity of the alimony and support exception, its historical roots and underlying social policy, . . . the rights of former spouses and of children should be 'liberally protect[ed]' against discharge in bankruptcy." Buccino, 397 Pa.Super at 251 (citing Schmiel, 94 B.R. at 377). The party objecting to discharge bears the burden of proving that the obligation is in the nature of alimony, maintenance, or support. In re Gianakas, 112 B.R. 737, 741 (W.D. Pa. 1990) aff'd, 917 F.2d 759 (3d Cir. 1990).

Four elements must be satisfied to establish a domestic support obligation claim under section 523(a)(5): 1) the debt must be "owed to or recoverable by" a governmental unit or a person with a specific relationship to the debtor such as a spouse, former spouse, or child of the debtor; 2) the underlying obligation must be in the nature of alimony, maintenance, or support of such person; 3) the obligation must arise from an agreement, court order, or as otherwise defined; and 4) the debt must not be assigned to a nongovernmental entity unless voluntarily done. 11 U.S.C. § 101(14A).

Because the Defendant does not contest the nondischargeability of paragraph 2 of the Consent Order, the issue before the Court is whether the obligation contained in paragraph 7 of the Consent Order constitutes a nondischargeable domestic support obligation, as argued by the Plaintiff, or a dischargeable property settlement, as averred by the Defendant. Because the Plaintiff has satisfied all four elements required to establish that the debt due under paragraph 7 of the Consent Order is a domestic support obligation, the Court finds the obligations contained in both paragraphs 2 and 7 of the Consent Order are nondischargeable domestic support obligations.

***A.***

First, the obligations are owable to the Plaintiff. The Defendant argues that the debt referred to in paragarph 7 is a mortgage obligation and is therefore owed to the mortgage lender; however, payment of the support, maintenance, or alimony need not be paid directly to the spouse or ex-spouse. In re Calhoun, 715 F.2d 1103, 1107 (6th Cir.1983). Mortage fees, as well as other obligations such as counsel fees and guardian ad litem fees, have been found to be "owable" to ex-spouses when pursuant to settlement agreements and for the purpose for 523(a)(5). See In re Spong, 661 F.2d 6, 10–11 (2d Cir.1981); In re Louttit, 473 B.R. 663 (Bankr. W.D. Pa. 2012); In re Johnson, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008). Under those terms of the Settlement Agreement which were not altered by the Consent Agreement, the Defendant's conveyance of his property interest in the Residence remained "subject to the note secured by the Deed of Trust . . . which the husband shall assume and agree to hold the [Plaintiff] free and harmless relative thereto." (Doc. # 14, Exhibit 1, ¶ 6D). Due to the language in the Separation Agreement by which the Defendant agreed to hold the Plaintiff harmless, if the Plaintiff were forced to pay the mortgage debt, then

the Defendant would be liable to the Plaintiff.  Thus, the debt is owed or recoverable by the Plaintiff.  See Johnson, 397 B.R. at 296.  Thus, the Court finds this first element satisfied.

***B.***

Second, the obligations in paragraphs 2 and 7 of the Consent Order are both in the nature of alimony, maintenance, or support.  "[W]hether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement."  In re Gianakas, 917 F.2d 759, 762 (3d Cir. 1990) (citing In re Yeates, 807 F.2d 874, 878 (10th Cir. 1986); Tilley v. Jessee, 789 F.2d 1074, 1077 (4th Cir.1986); In re Miller, 34 B.R. 289, 292 (Bankr. E.D. Pa. 1983).  That intent can best be found by examining three principal indicators.  Gianakas, 917 F.2d at 762 (noting that "many other factors referred to by various courts are merely elements of these indicators").

First, courts shall examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary.  Gianakas, 917 F.2d at 762 (citing Yeates, 807 F.2d at 878).  Because it is unlikely that the effect of a subsequent bankruptcy was contemplated at the time the obligation arose, "the parties and the state courts may not have focused on whether a particular obligation was to serve as support or as a property settlement unrelated to support."  Gianakas, 917 F.2d at 762-63 (citing In re Wisniewski, 109 B.R. 926, 929 (Bankr. E.D. Wis. 1990); In re Alloway, 37 B.R. 420, 425 (Bankr. E.D. Pa. 1984)).  Thus, "bankruptcy courts often are faced with ascertaining the nature of an underlying obligation the legal consequences of which were never contemplated by the parties."  Buccino, 397 Pa.Super. at 251-52, 580 A.2d at 18-19.  As the Pennsylvania Superior

Court noted, even an obligation designated by the parties as a property settlement may actually be considered as domestic support, because state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution. Id. Further, "property division often achieves the same goal as alimony, i.e., support." Gianakas, 917 F.2d at 763 (citing Buccino, 397 Pa.Super. at 252).

Because the language of the agreement alone may not conclusively evidence the parties' intent, courts should then look to the remaining two factors: the parties' financial circumstances at the time of the settlement, and the function served by the obligation at the time of the divorce or settlement. Gianakas, 917 F.2d at 763. In setting forth these three indicators, the Third Circuit noted that the factors enumerated by other courts as relevant in determining whether obligations are domestic in nature are "elements of these indicators." Id. at 762. The factors most often cited in the case law, in addition to the label given to the obligation in the underlying instrument and the express terms of the obligation, include the termination terms of the obligations, any economic disparity between the parties, the length of the marriage, whether minor children are in the care of one spouse, whether the support award would have been adequate absent the liability in question, whether the debts are payable directly to the former spouse, the circumstances leading to the dissolution of the marriage, and the parties' financial resources. Buccino, 397 Pa. Super. at 254; In re Alloway, 37 B.R. 420, 425 (Bankr. E.D. Pa. 1984).

The following factors in the instant case indicate the domestic support nature of the Consent Order obligations: 1) the language describing the obligations, including their duration and termination terms; 2) the primary physical placement of the minor children resting with the Plaintiff; 3) the mortgage obligation's function of providing a necessity to the minor children; and 4) the inadequacy of the child support award.

As the Defendant notes, the Consent Order includes two headings: "Child Custody and Child Support" and "Mortgage on [Residence]." Paragraph 2, outlining the child support terms, falls under the first heading, and paragraph 7, defining the mortgage obligation, falls under the second. Thus, the Defendant argues, the express language and format of the Consent Order supports a finding that the mortgage obligation was not intended as alimony, maintenance, or support. However, as highlighted by the Plaintiff, the explicit language of paragraphs 2 and 7 demonstrate that the two obligations do not stand alone, and any modification to one obligation necessitates a change to the other. Pursuant to paragraph 2, any modification to the child support obligation requires adherence to paragraph 7.b, stating ". . . the parties agree not to and shall not seek a modification of child support for [seven (7) years] unless, and only if, the conditions set forth in paragraph 7(b) below have been met." (Doc. # 1, Exhibit A, ¶ 7.b.). Paragraph 7.b. further connects the Defendant's obligation to pay a portion of the mortgage to the Plaintiff's entitlement "to seek modification of future child support" upon the sale of the property or other change to the obligation under the note. (Doc. # 1, Exhibit A, ¶ 7.b.). Thus, under the explicit language in the Consent Order, the parties intended that a change in the terms of the obligation contained in paragraph 7 would justify a change in the terms of the obligation contained in paragraph 2. Since a change in the mortgage payment would give rise to the Plaintiff's entitlement to seek a modification (presumably an increase) in the child support payments, the Court finds that the language of the agreement itself demonstrates the parties' intent for the mortgage payment obligation to be linked to the child support obligation, and their intent for both to be considered alimony, maintenance, or support.

The Defendant acknowledges that a change in the mortgage obligation would result in the Plaintiff's entitlement to a modification, but argues that the Plaintiff's recourse is therefore limited to filing for a modification to increase the support. (See Doc. # 15, pp. 5-6). This Court finds that, because of the inclusion of the modification terms in paragraph 7, it is reasonable to infer the parties' intention for the obligation thereunder to be in the nature of alimony, maintenance, or support, and thus the Plaintiff need not file for a modification to increase the child support pursuant to the Defendant's filing for bankruptcy.

Furthermore, the duration and termination terms of the obligation contained in paragraph 7 demonstrate that the parties intended for such obligation to be a form of alimony, maintenance, or support, as such language further connects the mortgage payments to the child support payments, as well as to the youngest child's reaching the age of majority. The child support payments provided for in paragraph 2 were agreed to "not be subject to a change for a period of seven (7) years," while paragraph 7 requires the Defendant to pay $901.95 a month towards the monthly mortgage "for a period of sixty (60) months," and "[t]hereafter, . . . $450.98 . . . for a period of twenty-four (24) months." (Doc. # 1, Exhibit A, ¶ 7.a.). After this period of sixty months plus twenty-four months, totaling eighty-four months or seven years, Plaintiff becomes solely responsible for the mortgage payments. Further, as noted in paragraph 2, the child support payments "shall not increase or descrease following the minor child . . . reaching the age of majority." (Id. at ¶ 2). The Consent Order was entered into in 2011, and the minor child was born in 2000. Thus, in seven years from the date of the Consent Order the year will be 2018, which also represents the year of the minor child reaching the age of majority, and also the year when the parties agreed to allow

the child support payments to be modified, and for the Defendant's mortgage payment resposibilies to cease.

The Defendant acknowledges that his obligation to pay the mortgage obligation ceases in 2018, but argues that this date "does not coincide [with] nor relate to the date in which his child support shall terminate." (Doc. # 15, p. 4). The Consent Order does not provide for termination of the child support payments, so the Defendant's statement is technically correct. However, the Defendant cannot dispute that the parties agreed upon prohibiting any modification of (which could arguably include the termination of) the the child support obligation until 2018, the same year in which the parties agreed to termination of the Defendant's mortgage obligation. Thus, the Court finds that the terms of the Consent Order explicitly link the child support obligation with the mortgage obligation, indicating the parties' intent to consider the mortgage obligation as further alimony, maintenance, or support. See, e.g., In re Gianakas, 112 B.R. 737 (W.D. Pa.) aff'd, 917 F.2d 759 (3d Cir. 1990) (debtor's obligation to make second mortgage payments constituted nondischargeable support obligation where mortgage payment obligation was not to terminate under the same conditions as specifically designated alimony provisions, but would end at about the same time as the child support payments).

The Court also finds the primary physical placement of the minor children with the Plaintiff, as well as the mortgage obligation's function of providing a necessity to the minor children in the form of their primary residence, suggestive of the mortgage obligation's being in the nature of alimony, maintenance, or support. Pursuant to the Consent Order, the parties share joint legal custody of the minor children, although the Plaintiff maintains "primary physical placement subject to [the Defendant's] receiving liberal visitation as the parties agree." (Doc. # 1, Exhibit A, ¶ 1). Further,

{00016754}

the parties agree that the mortgage payments encumber the Residence, in which the Plaintiff and the children currently reside. Any obligation that services to maintain daily necessities, such as housing, is indicative of a debt intended to be in the nature of support. Gianakas, 917 F.2d at 763, Yeates, 807 F.2d at 879; see also In re Hayden, 456 B.R. 378, 383 (Bankr. S.D. Ind. 2011) (debtor's obligation to make mortgage payments on former marital residence awarded to his ex-wife by state dissolution court was in nature of domestic support oligation owed to his ex-wife and the minor children of whom she had primary physical custody, where the mortgage payment was in addition to a separately identified child support payment, and where ex-wife could not afford marital residence without the debtor's assistance and where awarding the marital residence to the ex-wife sought to preserve children's routines and way of life).

The final factor the Court finds determinative of the nature of the mortgage obligation is whether the support award would be inadequate absent assumption of the debt. The Plaintiff attached to her Pre-Trial Statement an affidavit of her divorce counsel, Randal Hunter ("Mr. Hunter") addressing this factor. In his affidavit, Mr. Hunter, who served as the Plaintiff's counsel at the time the Consent Order was entered into, states that the payments provided for in paragraph 7 of the Consent Order "are clearly in the nature of child support." (Doc. # 14, Exhibit 2, ¶ 3). Averring that the "court order directed [the Defendant] to pay child support outside of the North Carolina Child Support Guidelines," Mr. Hunter notes that the "child support payment was also non-modifiable under paragraph 2" and that it "was made non-modifiable in light of the [Defendant's] obligation to make the house payment." (Id.) He further notes that "[p]aragraph 7 . . . also gives the [Plaintiff] the right to request a modification of child support in the event that the [Defendant] was relieved of his

obligation to make the house payment. . . . This provision, alone, recognizes that the house payment was an element of child support." (Id.). Lastly, Mr. Hunter states, "I do not recall the specific amount of child support that might have been provided had we calculated guideline child support and based th[e] [C]onsent [O]rder thereon. I am certain, however, that the child support that [the Defendant] was required to pay in th[e] [C]onsent [O]rder was lower than it might have been because the house payment was an element of that support." (Id. at ¶ 4).

The Defendant also attached an affidavit to his Pre-Trial Statement of his divorce counsel, Kimberly L. Farias ("Mrs. Farias"). Mrs. Farias began representing the Defendant on December 17, 2007. (Doc. # 15, Exhibit 2, ¶ 1). She states that the obligation for the Defendant to make mortgage payments contained in the Settlement Agreement dated January 28, 2002 "was part of the property distribution and was not child support." (Id. at ¶ 3). Referring to the child support payments set forth in the Settlement Agreement, she states, "It is my understanding that said amount of child support was calculated based upon the parties' gross montly income and in accordance with the North Carolina Child Support Guidelines then in effect." (Id. at ¶ 3). Because Mrs. Farias did not begin representing the Defendant until almost six years after the Settlement Agreement was entered into, the Court finds her comments relating to the parties' intent at the time of executing the Settlement Agreement unpersuasive.

Regarding the Consent Order, Mrs. Farias avers in her affidavit that it "was [her] understanding that the parties [sic] intent was to leave the child support amount unchanged as as previously set per the [Settlement] Agreement," and that the Defendant's "obligation to make any payments toward the mortgage ceases on December 1, 2018, which does not coincide nor relate to the date in which his child

{00016754}
-12-

support obligation shall terminate." (Id. at ¶¶ 8, 9). The Court finds Mrs. Farias' statements regarding the Consent Order, such as the above, to be primarily factual statements regarding applicable law and the ultimate agreement which do not address the intent of the parties or persuasively speak to the fourth factor at issue here, i.e. whether the support award would be inadqueate absent assumption of the debt. As such, the Court finds that the documents and pleadings in front of the Court suggest that the support award would in fact be inadequate absent assumption of the debt provided for in paragraph 7.

Thus, the court finds that the parties intended the mortgage obligation as alimony, maintenance, or support, in satisfaction of the second factor required for the debt to be found nondischargeable under section 523(a)(5).

### C.

The third factor required to establish a domestic support obligation claim is met by proving such debt was established by a separation agreement or order of court of record. As set forth in Plaintiff's Complaint, the child support and mortgage obligations at issue result from provisions within the Consent Order, which was filed within the parties' divorce, child custody and support case, James William Price v. Kimberly Lewis Price, 08 CVD 1757, in the County of Carteret, State of North Carolina. The Plaintiff has clearly satisfied this factor.

### D.

The Plaintiff has also satisfied the fourth factor, which requires that the debt is not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily. The Consent Order was entered into in December 14, 2011, and the Defendant filed for bankruptcy on January 9, 2015. The obligations at issue here

were established prior in time to the filing of the bankruptcy, and have not been assigned to any other entity.

### III.

For the reasons set forth above, the Court finds that the debt owed by the Defendant to the Plaintiff pursuant to paragraphs 2 and 7 of the Consent Agreement shall be held nondischargeable pursuant to 11 U.S.C. § 523(a)(5). An appropriate order shall follow.

**Date**: October 5, 2015                                         jds

                                                **JEFFERY A. DELLER**
                                                Chief U.S. Bankrutpcy Judge

**Case adminstrator to serve:**

    Leonard P. Vigna
    Terry L. Graffius
    Office of U.S. Trustee